I'm short. I can put this way down here. Good morning, Your Honors. I would like to reserve four minutes for rebuttal. May it please the court. This case, this appeal presents a pure question of statutory interpretation under 11-523-A8B. An issue somewhat of first impression in this circuit. The question is whether this informal mixed-use family loan satisfies Congress' narrow and technical definition of a qualified education loan. It does not. It fails for two independent dispositive reasons, either of which requires reversal, not remand. First, the loan was not incurred solely to pay for higher education expenses, as Congress unambiguously requires. Second, Dr. Pearson was not an eligible student at an eligible educational institution because federal regulations rendered his medical program, his foreign medical program, Title IV ineligible when he attended Northumbria in England. The main campus of St. George's Medical School is in Granada in the Caribbean. Appellee's reply confirms that they are asking this court to rewrite the statute, disregard binding regulations, and expand the non-dischargeability far beyond what Congress has authorized. Solely means exclusively. The text controls, 523-A8B incorporates IRS code or IRC code 221-D1. Congress defined a qualified education loan as indebtedness incurred solely to pay for qualified higher education expenses. Congress did not say primarily. Congress did not say mostly. It said solely. And the bankruptcy court found that this was a mixed-use loan. The bankruptcy court found that $266,000 of $331,000 of the judgment that was loaned was used for tuition. The remainder of that amount was not used for tuition. It was used to pay for pre-medical coursework, living expenses, travel. Funds were transferred informally without restriction. And those funds were deposited not into the debtor's bank account but into the Nichols, the lenders and Appellee's here. They deposited that into a joint account with their daughter. And then she would transfer money for tuition. Counsel, you say mixed-use loan. Yes. And throughout it, you know, there's a finding stipulation that there is a loan. But going through the record, there's all sorts of transfers. So why is this a loan as opposed to loans? Because as I understand it, a lot of the money was transferred at the time, you know, tuition was about to be due or so forth. So you have a loan for the undergraduate education that may not qualify. But then you have a second or seventh transfer, whatever it would be, when medical school started. Are we bound by the stipulation that it is just one loan? I think that's a good question, Your Honor, and it highlights an area that I want to address. First, there is no contract. This was oral. There are no written contracts. There are no promissory notes. There were no payment terms. There was no restrictions on the use of the funds. Those were just transfers made. So to say that there was one loan or multiple loans is hard to do because there were so many different transfers. And I think that falls to the Nichols in this matter. They were sophisticated business people, you know, ran a multimillion-dollar business. And they knew, you know, they've dealt with lawyers before. They knew that they could have done a contract here. And in this case, there was no contract. And I think that's important to note. There's a burden there on the lender to have a contract. But there's also benefits and protections that should have been there for them, and it should have been there for Dr. Pearson. Dr. Pearson had it been a Title IV student loan or even, you know, a private lender that did a Title IV loan. There would have been opportunities for forbearance, for deferment, for forgiveness, if he had taken a position in an underserved area. None of those guardrails, none of those safeguards were in place for either party. Is it true to the evidence that was presented was basically the transfers from the Nichols into an account with the daughter? You don't have any other records about how the money was transferred out of that account into the joint account between the debtor and the daughter, Stephanie. And then the only other evidence is the actual tuition statements for the time he was at either St. George University or at St. George University Medical School. That is correct, Your Honor. That was the evidence at trial. So there was nothing that established there were multiple loans in this matter, and the lower court, sorry, the state court had determined that it was a loan and not a gift. And it was a loan for $331,500. That is correct, Your Honor. The appellee's reply confirms the error that was made. Appellees argue that actual use of those funds is irrelevant and that the only relevancy was the purpose of the loan. But that argument doesn't appear in the statute. Congress used an objective criteria, not a subjective intent criteria. Further, there were Treasury regulations that removed doubt around that issue. 26 CFR Section 1.221-1 expressly states that a mixed-use loan is not qualified and provides an example that is almost exactly like this case to understand the after-the-fact parsing of appellee's purpose for the loan. The bankruptcy court's ratio test and the appellee's series of loans theory appear nowhere in the statute or the regulations. The mixed-use is absolutely prohibited, and we want that to be prohibited. If you think about it, you could have a lender come in and say, we'll give you loans to get your law degree, and you can do a home remodel at the same time. And if those are under the same loan and there's financial problems and that debtor goes to file for bankruptcy or that borrower goes to file for bankruptcy, they are now paying a non-dischargeable loan for home improvements. That was not the intent under Title IV, and it was made clear that's why those types of loans are not eligible. Appellee's reply also makes clear that there's a conflict. They state that the program eligibility is irrelevant and that 34 CFR section 600.55H has no connection to dischargeability, but that position is legally untenable. Congress required that the student be an eligible student, and under section 221D1C of the IRC, it requires that the expenses be attributable to education furnished during a period in which the recipient was an eligible student. Eligible student is defined by the Higher Education Act, which expressly ties eligibility to Title IV participation. Eligibility is defined by regulations, and Congress gave the Department of Education the authority to write those regulations so that it could carry out the purpose of Title IV lending. No portion of a foreign medical school, foreign medical education program, other than clinical training, may be located outside the country of the main campus. St. George's main campus was in Granada. Dr. Pearson completed his first year in England. The handbook, Federal Student Aid handbook, is very clear about those foreign medical school programs. But Ms. Dooling, aren't you really suggesting that if he was participating in a program even though he was an eligible student and even though it was an eligible institution, that program is specifically excluded by the regulations, and so if all the programs don't satisfy the requirements, then the program itself should be disqualified? But that's not what the code requires, does it? Well, you cannot have Title IV funding if you're not in an eligible program at an eligible institution and you're an eligible student. And I think that's the problem in this case, is when you were looking at the string of statutes, they stopped on one of the statutes that said, oh, you're an eligible institution. And that disregards the entire rest of the statute and the regs that require program participation agreements to be eligible, to have that program be eligible. And not to make light of the situation, but if you went to UCLA and you went to their underwater basket weaving program and that was not a Title IV eligible program, you couldn't just get Title IV funding for that program even though UCLA is on the federal student aid list or federal student school list. So are you suggesting that if you went to UCLA to go to get an undergraduate degree and one of your electives was basket weaving and that wouldn't qualify, then UCLA wouldn't be a qualified institution? No, that's not the argument, Your Honor. The problem with the program is not taking an elective that might not be Title IV eligible. It has to be, you have to be in a graduate program that is an eligible program. So meaning most of the criteria of that program meets the Title IV regulations. Well, with the exception of the one year that he took in Northumbria, which you take issue with, the rest of the program qualified, didn't it? Yes, but they are very, very clear, especially in the Department of Education letter that was sent to St. George's, stating if your students take this coursework outside of Granada, then they're not eligible for Title IV funding. That is plastered all over their website. That is plastered in the financial student aid handbook. They are very clear that you're not going to get funding in that. Do you want to reserve the rest of your time? Yes, thank you, Your Honor. Sorry, I've blocked the time. Good morning, Your Honors. I'll reserve two minutes for rebuttal. Good morning, and may it please the Court. My name is Vanessa Hopperbush, and I'm representing the appellees and cross-appellants, Rob and Cora Nichols. As my colleague has stated, this case is a simple one. The facts are not in dispute. My clients loaned money to the debtor to fund his medical education, and the debtor seeks to discharge that loan that he used to fund that education with a medical degree that he currently is using and enjoying today. The facts are not in dispute. The debtor agrees to that in the brief and today. Ultimately, the dispute is a legal one, whether the loan is non-dischargeable. While it's a unique issue of law, we believe that it is one of statutory interpretation that only has one of two conclusions. One, that the entire loan is non-dischargeable, as my clients assert, or two, affirm the decision of the Bankruptcy Court, which was that part of the loan was non-dischargeable. The analysis starts with Section 523A.8.B. Using that analysis, the Court must go through the statutes using only those statutes referenced in each of the applicable what I'll call tranches of interpretation as we set forth in our brief. What appellant does is use regulations and matters that are not specifically within that framework to try to merge and conflate programmatic eligibility with both institutional eligibility and a student's eligibility. First, I'll start to the institution's eligibility. Let me ask you a question. The 523A.8.B. states that any other educational loan that is a qualified educational loan, and then it references the code section of the IRC 221D.1. Correct. If the Bankruptcy Court made a factual finding that it was an educational loan for premedical and medical school education, you don't dispute that, correct? Correct. If the Bankruptcy Court made a factual finding that the premedical education at St. George's University, not the medical school, is not an eligible institution because St. George's University was not on the federal school list, then if Nichols made a loan for a total of $331,500, correct? That's correct. to pay for medical education, but part of the loan was used to pay for education and expenses at an ineligible institution, St. George's University, then how does Nichols' loan satisfy the requirement of 523A.8.B. that accepts from discharge any other educational loan that is a qualified educational loan as defined in Section 221D.1? Yes, Your Honor, I'll address that in a couple of points. So first, when we look at Section 26 U.S.C. Section 221D.1, the language looks at whether the loan was incurred solely to pay higher, qualified higher educational expenses. There's no dispute by any parties or the Bankruptcy Court that the entirety of the loan was incurred for education and for the debtor's medical education. But there's a definition of what a qualified medical loan is under that section, right? Correct. And it requires that the student be eligible and the institution be eligible. Correct. So if the factual finding is that part of the loan was used for a non-qualified higher educational expense, for this argument, I'm assuming that it is. My argument is that it was not incurred for paying a non-qualified expense. How could it not be, since you're saying that the entire loan is all part of the educational loan? So it has to do with why the loan is incurred, Your Honor, because you look at what the loan was incurred for. It's incurred solely for a purpose, which was for the debtor to obtain his medical degree, which he did. So because that's the purpose of the loan, that's the stated purpose, there's no other purpose, the entirety of the loan to be non-dischargeable. That merges two different concepts. One is that it's an educational loan, and the stated purpose clearly is that it's for an educational loan. That's established by the state court. It's established, I think, by the bankruptcy court. But the second piece of it, that it is a qualified loan, is not defined by the stated purpose. That requires actual elements of each of the qualified loan subsections be met, doesn't it? Your Honor, I do not believe it does, because you have to look at the purpose of the loan. But even assuming that, Your Honor, it's correct and that it does matter, this is a series of loans. Oh, wait a second. You say a series of loans. And I was curious about this. When I go through and read the record, there is a series of transfers. But the way your client pled this issue is that there is a loan. And there is a stipulation, and this has gone to trial, and it was stipulated, so we have a finding of fact here that there is a loan singular, not loans. It would be very different to me if this was pled differently and we had different findings of fact. We had a finding of fact is that there was X dollars used to pay for the undergraduate institution that may not have been qualified, and there was Y dollars that was used to pay for the medical school education, which everybody appears by itself views that as qualified. If you had loans, maybe one loan would be dischargeable and the other one would not. But when you have only one loan, the money went for two different purposes. It went for the purpose of paying for the undergraduate biology classes to be able to get into medical school, and then it paid for medical expenses. It was one loan that had two purposes, and that's what I'm struggling with. We have two purposes, but then we have the language in the IRC that says solely for. It doesn't seem to me that there's a problem there. Understood, Your Honor. And again, that was going to my first point that I was addressing earlier in terms of why we believe it's incurred solely for a purpose, which it was incurred for the sole purpose of medical school education. But to the extent that Your Honors do not see it that way, again, this was an oral loan. It was not. Okay, but you could have pled it differently. So we have maybe it was 18 loans. We had a loan for tuition to the undergraduate institution, a loan for expenses related to the institution, maybe housing expenses. And then we had the fourth loan was for medical school tuition and medical school housing. And so you'd have a series of loans. We wouldn't have had this problem if it was pled differently. Understood, Your Honor. I will say that the reason it was pled the way it was is because, again, my client's intention, and I believe all of the parties' intention was this was incurred solely for one purpose, which was the medical school education. The fact that it was used for something else was not the intention of the parties. Nor was that reading the- But it was the intention of the parties to use it for the undergraduate expenses. They intended, didn't they, isn't the record clear that everybody knew that the doctor wasn't going to get into medical school right then? And the doctor had to take some, I'm guessing, biology-type classes, you know, things that they didn't-that were sort of prerequisites to go to medical school. That was one of the purposes here is to get to buttress his record so that he could get into medical school. So ultimately there was a purpose, but there was a purpose to get there. The purpose could have been met that he could have gotten into medical school and decided he didn't like it like he didn't like the practice of law. I mean- Understood, Your Honor, but I think if, again, the intention was for him to get the medical degree. So that is our perspective. I'm not sure if I can say anything that will change your mind on what the facts of the record are. I haven't made up my mind. I'm listening to you.  Yeah, I'm just not sure if I can add anything else. I think the record is fairly clear on that. I do think that due to the nature of the loan, yes, we pled it as one loan, but it is also a series of loans. When he said he needed money for medical school, which it's fairly vague, my clients would provide money for that in a series of transactions. But it's also pretty vague as to what- how the money was actually loaned, right? The only evidence you provided was the deposits from Mr. Nichols into the joint account with his daughter. You don't have any of the expenses that she actually- the transfers that she actually made out of that account into the joint account. You don't have any expenses that she made from the joint account to the university or for any expenses. Then you just have the tuition statement.  That's the totality of your evidence. So it's your contention, I think, if I understand, that a mixed-use loan, in this case, one to pay for the pre-med and one to pay for the- or continuously to get to the medical degree, but knowing that part of it was going to be used to pay the undergraduate expenses, is a single loan comprised of some funds used for qualified educational expenses, those that were at the eligible school, and part not nevertheless is accepted from discharge under 523A8 based on the stated purpose of the loan, that it was for medical education. Isn't that your position? Your Honor, it's slightly more nuanced than that because our position is that it was incurred solely for the purpose of medical education. But yes, otherwise you are correct. And then if Nichols' view is that the entire loan was for educational purposes, that's sufficient to make it non-dischargeable under 523A8B, even though it doesn't address the second portion of that that says an educational loan, that is a qualified loan. Your Honor, again, we believe that it is because St. George's is an eligible institution and the medical degree was obtained. But not the medical- the non-medical school is not a qualified institution. Understood, Your Honor. I do have one comment on the factual finding of the bankruptcy court, which we do dispute. I do know that's a higher standard, but we do not dispute that there was pre-medical school education. We do dispute whether that was paid to a qualified educational institution, St. George's. The tuition statement is one tuition statement. All of the payments were made to that same school. The other received all of education from the same school. By that logic, the entirety is non-dischargeable as well. Again, that is a higher standard, but that is our position, Your Honor. I understand your position, but you would have needed to argue that in the brief and suggest that that factual finding was clearly erroneous and the court should reverse it, and I didn't see that argument being made in your brief. Understood, Your Honor. Okay. Thank you. Thank you, Your Honor. I will reserve the rest of my time. Thank you. But the argument that actual use and purpose were met, we would take the position and do contend that even if actual use and purpose was medical school for the loans, that still does not defeat the solely requirement that Congress put out there. And this may be a harsh result on this one loan, but that is what Congress set forth. And there's a reason why that is a harsh result, because we don't want mixed-use loans coming up. We don't want that to be an issue that comes up in Title IV lending. Would this issue not have come up if it was better documented and it was documented as a series of loans? Would your client have lost if that was the case, if there were findings that there were loans for the undergraduate institution and there were separate loans for the medical school? That may change the fact on this, but that didn't happen here, number one. Number two, even though there is a statement that lists all the money that went to St. George's, that's just a statement. You call them up and say, we want to see how the tuition was paid, and they can print off a statement for you. That does not document that there were individual loans, and they did treat this as one loan throughout this process. And your other argument is that the institution itself was not qualified because it offered a program that violated the terms of the letter that you received from the Department of Education that said if you do a year of your first medical school year outside of the Granada campus, then it won't qualify. But that really only establishes that you wouldn't be entitled to get student loans through the government. It doesn't establish that the campus is an ineligible school, does it? Well, the campus itself is an eligible school. We don't dispute that. But even if there was a private lender, you know, as we had here on it, that private loan is not going to rise to the level of non-dischargeability. You still have to meet the non-dischargeability requirements under 523A8B. Talking about the intended purpose, that issue was addressed in actually a Washington case, and I believe it was in Ray Corbin, and that was under an entirely different section of 523. And I think that distinction has to be made here because we are under A8B and not that other section. So you have to follow the statutory string to make sure that this loan was actually a non-dischargeable loan. With that, Your Honors, even though this was a family situation and it obviously didn't end well, that is not something that we can take into consideration here. We have to follow the statute. We have to follow the law. And the facts are undisputed in this case. And at this point, we believe that this loan cannot be held to be a non-dischargeable loan. Non-dischargeability is a very harsh and unintended, or not unintended, but very harsh situation where we lean towards granting the debtors a fresh start. And that's what we believe in this case should happen. Thank you. Thank you. Judge Corbett, you asked whether this loan was documented and might make the results different. And I believe that it may. The problem is we have an oral loan with very loose terms. I think my thought was somehow we had evidence that there were loans, even if it was documented or it was clear or it was pled that there were loans. But I'm troubled by the fact that we have a pleading and a stipulation that all say we have loans singular. And then we have the sole purpose language that deals with that. If we had two different loans, we could have two different purposes. Understood, Your Honor. And the bankruptcy court did take an approach where part of it was non-dischargeable and part of it was dischargeable, although he didn't make the explicit finding on whether these were separate loans or not. The evidence is clear. But there is a specific finding that was stipulated to that there is one loan, right? That is correct, Your Honor. But there are also findings that there were a series of transfers of money from my clients to the debtor. So that can be seen in a number of different ways. Yes, you are correct that it is pled as one loan. And, again, I would say the purpose of that loan is one purpose for his medical education. And because St. George's is an eligible institution and he got his medical degree there, all the statutes would allow for the entirety of the loan to be non-dischargeable. That is our position on that. I mean, maybe there's an old rule that's not, you know, I'm not citing to it, but that parties document your loan transactions. Yes, I think that is a lesson for sure here, Your Honor, especially perhaps getting more information about the type of school and all of those things. Since this is a rather unusual school, I think if it had been a, what you call a traditional school, this would not be an issue either. Because it is a foreign school, you get an interesting legal issue out of it. I will also comment that the purposes of non-dischargeability, while appellant is correct, they are to be viewed in favor of the debtor. You have educational loans non-dischargeable for a reason. It's because you would obtain a benefit from that loan. And if you can use that, it's material. You don't have a loan here where you have a piece of paper that says you're a medical doctor that you can't use in the United States. He has a medical degree so that he can practice as a doctor here. The purpose of non-dischargeability is for that. So you're not having a loan from Joe Smoe's Medical School that's valueless, that costs you $200,000 so that the debtor can get a fresh start. These things are relevant and support the ruling that we are requesting of this Court, that the entirety of the loan be non-dischargeable, or to affirm the ruling of the Bankruptcy Court. Thank you, Your Honor. Thank you. We'll take this matter under advisement, and we will issue a decision as soon as we can. Thank you both. Thank you. I'm going to call the next case.
judges: Gan, Corbit, and Niemann